7:25-cv-8028-NSR

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM PAYNE III,

Plaintiff,

- against -

THE CITY OF NEW YORK,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

***STEVEN BANKS***
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Madeleine A. Knutson*
*Tel:(212) 356-2445*
*Matter No. 2025-070040*

**Served on April 9, 2026**

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........................................ III

PRELIMINARY STATEMENT ........................................ 1

FACTUAL ALLEGATIONS ........................................ 1

A. Plaintiff's Factual Allegations ........................................ 1

B. History of Prior Litigation ........................................ 8

STANDARD OF REVIEW ........................................ 9

ARGUMENT ........................................ 10

POINT I ........................................ 10

PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL AND RES JUDICATA ........................................ 10

POINT II ........................................ 14

PLAINTIFF OTHERWISE FAILS TO STATE DISCRIMINATION AND RETALIATION CLAIMS UNDER SECTION 1983, THE SHRL, AND THE CHRL ........................................ 14

A. Section 1983 ........................................ 14

B. SHRL and CHRL ........................................ 17

POINT III ........................................ 18

PLAINTIFF FAILS TO STATE A CLAIM FOR FLSA RETALIATION ........................................ 18

POINT IV ........................................ 19

PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FMLA ........................................ 19

**Page**

POINT V ........................................ 21

PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE FURTHER AMENDMENT WOULD BE FUTILE ........................................ 21

CONCLUSION ........................................ 22

CERTIFICATE OF COMPLIANCE ........................................ 23

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Achille v. Chestnut Ridge Transp., Inc.,
584 Fed. Appx. 20 (2d Cir. 2014) .....20

Ashcroft v. Iqbal,
556 U.S. 662 (2009) .....10, 15

Ayazi v. New York City Bd. of Educ.,
2004 U.S. Dist. LEXIS 34452
(E.D.N.Y. Sept. 13, 2004) .....12

Bell Atl. Corp v. Twombly,
550 U.S. 544 (2007) .....10

Brandon v. NPG Records, Inc.,
840 F. App'x 605 (2d Cir. 2020) .....10

Brodsky v. N.Y.C. Campaign Fin. Bd.,
796 F. App'x 1 (2d Cir. 2019) .....13

Butts v. Kelch,
2025 U.S. App. LEXIS 30088
(2d Cir. 2025) .....16, 17

Carmellino v. Dist. 20 of N.Y.C. Dep't of Educ.,
2004 U.S. Dist. LEXIS 5754
(S.D.N.Y. Apr. 6, 2004) .....11

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002) .....1

Cuoco v. Moritsugu,
222 F.3d 99 (2d Cir. 2000) .....21

Davis v. Norwalk Econ. Opportunity Now, Inc.,
534 Fed. Appx. 47 (2d Cir. 2013) .....18

Dennis v. Ultimus Fund Sols., LLC,
2021 U.S. Dist. LEXIS 152177
(E.D.N.Y. Aug. 12, 2021) .....20

Europe v. Equinox Holdings, Inc.,
2022 U.S. Dist. LEXIS 163254
(S.D.N.Y. Sept. 8, 2022) .....16

<u>**Cases**</u> <u>**Pages**</u>


<u>Faber v. Metro. Life Ins. Co.</u>,
648 F.3d 98 (2d Cir. 2011)....................15

<u>Greathouse v. JHS Sec. Inc.</u>,
784 F.3d 105 (2d Cir. 2015)....................19

<u>Kavowras v. N.Y. Times Co.</u>,
328 F.3d 50 (2d Cir. 2003)....................8

<u>Littlejohn v. City of New York</u>,
795 F.3d 297 (2d Cir. 2015)....................10

<u>Marcotte v. City of Rochester</u>,
677 Fed. Appx. 723 (2d Cir. 2017)....................18

<u>Marvel Characters, Inc. v. Simon</u>,
310 F.3d 280 (2d Cir. 2002)....................10

<u>Migra v. Warren City School Dist. Bd. of Education</u>,
465 U.S. 75 (1984)....................13

<u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>,
715 F.3d 102 (2d Cir. 2013)....................17

<u>Monahan v. N.Y.C. Dep't of Corr.</u>,
214 F.3d 275 (2d Cir. 2000)....................13

<u>Mullins v. City of New York</u>,
626 F.3d 47 (2d Cir. 2010)....................18

<u>Mumin v. City of New York</u>,
760 F. Supp. 3d 28 (S.D.N.Y. 2024)....................17

<u>Myers v. Doherty</u>,
2022 U.S. App. LEXIS 26982
(2d Cir. 2022)....................14, 15

<u>Richardson v. City of New York</u>,
2004 U.S. Dist. LEXIS 2562
(S.D.N.Y. Feb. 20, 2004)....................12

<u>Rodriguez v. N.Y. State Dept. of Parole</u>,
2019 U.S. Dist. LEXIS 219049
(S.D.N.Y. Dec. 20, 2019)....................21

**Cases** **Pages**

Ruston v. Town Bd. for the Town of Skaneateles,
610 F.3d 55 (2d Cir. 2010)....................18

Sank v. City Univ. of N.Y.,
2011 U.S. Dist. LEXIS 125016
(S.D.N.Y. Oct. 27, 2011)....................11

Shankar v. Ankura Consulting Grp., LLC,
2021 U.S. Dist. LEXIS 151098
(S.D.N.Y. Aug. 11 2021)....................17

Sista v. CDC Ixis N. Am., Inc.,
445 F.3d 161 (2d Cir. 2006)....................20

Small v. N.Y. City Dep't of Educ.,
650 F. Supp. 3d 89 (S.D.N.Y. 2023)....................17

Taylor v. City of New York Admin. for Children Servs.,
2021 U.S. Dist. LEXIS 60978
(S.D.N.Y. Mar. 30, 2021)....................12

Vega v. Hempstead Union Free Sch. Dist.,
801 F.3d 72 (2d Cir. 2015)....................14, 16

Williams v. N.Y. City Hous. Auth.,
816 Fed. Appx. 532 (2d Cir. 2020)....................8

**Statutes**

29 U.S.C. § 201, *et seq.*....................1

29 U.S.C. § 215(a)(3)....................18, 19

29 U.S.C. § 2601, *et seq.*....................1

29 U.S.C. § 2612(a)(1)(D)....................20

42 U.S.C. § 1983, *et seq.*....................1, 14, 16, 17

Fed. R. Civ. P. 12(b)(6)....................8

N.Y.C. Admin. Code § 8-101, *et seq.*....................1

N.Y. Exec. Law § 290, *et seq.*....................1

## PRELIMINARY STATEMENT

Plaintiff William Payne III ("Plaintiff") brings this action alleging that the City of New York ("Defendant" or "City") violated the Civil Rights Act of 1866, 42 U.S.C. § 1983, *et seq.* ("Section 1983"), the New York State Human Rights Law, New York Executive Law § 290, *et seq*. ("SHRL"), the New York City Human Rights Law, New York City Administrative Code § 8-101, *et seq*. ("CHRL"), the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"). All of Plaintiff's claims should be dismissed with prejudice because they are barred by collateral estoppel and *res judicata*, and otherwise fail to state a claim.

## FACTUAL ALLEGATIONS[1]

### A. Plaintiff's Factual Allegations

Plaintiff alleges that he was employed as a firefighter with the Fire Department of the City of New York ("FDNY") at Ladder Company 24 ("Ladder 24" or the "Firehouse") from March 28, 2022, to his termination on September 26, 2023. See Am. Compl. ¶¶ 1, 15, 78. Plaintiff during the duration of this employment with the FDNY was a probationary firefighter. Am. Compl. ¶¶ 15, 78. Plaintiff, who identifies as a Black man, alleges that "[t]hroughout the duration of his employment with the FDNY, Mr. Payne performed his duties in an exemplary manner and received a unit citation for his excellent work" and that "the FDNY subjected Mr. Payne to disparate treatment based on his race and retaliated against him for his engagement in protected activity when he complained of discrimination and wage-and-hour violations." Id. ¶¶ 14, 16.

---

[1] For the purposes of this motion to dismiss only, Plaintiff's well-pled, plausible factual allegations are assumed to be true. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

During his time at the FDNY Academy, Plaintiff claims that he and his peers were required to arrive at the auditorium at 5:30 a.m. for training (also referred to as an "evolution") that began at 7:00 a.m. and were generally not dismissed until 5:30 p.m. or later, "long past the end of the last evolution at 3:55 p.m.," and that he was not compensated for time worked before 7:00 a.m. and after 3:55 p.m. Id. ¶ 18. Plaintiff alleges that at Ladder 24, "probationary firefighters were regularly required to report to the firehouse two hours before each shift" and that this time was not compensated, such that Plaintiff "had to work several uncompensated hours per shift, and that this practice "continued every, if not virtually every, working day throughout Mr. Payne's probationary period." Id. ¶¶ 19-20.

Plaintiff was one of four Black men working at Ladder 24 and was "subjected to racially disparate treatment." Id. ¶ 21. Plaintiff was scheduled to work a "holiday evening overtime shift" on November 11, 2022, and that Andres Oviedo, a probationary firefighter, texted Plaintiff at 9:42 a.m. "to tell him the overtime shift for which he was scheduled that evening had been removed from his schedule and assigned to Mr. Oviedo, who was not Black." Id. ¶ 22-23. Plaintiff "highly prized overtime work" and "[t]his was not the only time Mr. Payne encountered "the FDNY's practice of prioritizing and favoring non-Black [firefighters] over Black firefighters when it came to offering overtime work." Id. ¶ 24.

Firefighters at Ladder 24 were "required to pay a 'house tax,' the proceeds of which were believed to be allocated to pay for cable television, internet access, coffee, and other expenditures;" and that t-shirts to raise money for the families of firefighters who died in the line of duty were also "charged to a firefighter's house tax." Id. ¶ 25. He "purchased several fundraising shirts in the early months of 2023," such that his "house tax" balance in March 2023 was $180, and because he had the highest tax balance, Chris Nock, a senior firefighter, informed him that he

had to work all of the "house watch" shifts. Id. ¶ 27. From March 2023 to May 2023, Plaintiff was "forced" to work 9-hour house watch shifts three to four times a week, between midnight and 9 a.m., wherein Plaintiff "had to stay alert all night…even after working a full regular shift during the daytime," which Plaintiff "understood" to be "deliberate deprivation of sleep as a form of hazing" and "targeted at him as one of the only Black firefighters." Id. ¶ 28. Plaintiff believes that Lieutenant Hughs, who is White, "had a higher house tax balance" but "was never required to work a house watch shift."[2] Id. ¶ 30. Plaintiff was "discriminatorily singled out for house watch shifts" from midnight to 9:00 a.m., "a nine-hour stretch that far exceeded the three-hour periods prescribed by FDNY policy" and was not monitored by an Officer or experienced member, as required by "Chapter 20 of the FDNY regulations," while "non-Black firefighters were assigned far fewer (or no) house watch shifts" and, when assigned "were limited to the three hour periods prescribed by the policy." Id. ¶¶ 30-31.

Plaintiff alleges that he was never assigned a partner with whom to do shift exchanges but non-Black probational firefighters at Ladder 24 were assigned a "Mutuals partner"[3] and that other probational firefighters worked mutual shifts "approximately twice a week" he was only "occasionally" able to work a mutual shift. Id. ¶¶ 33-35. Plaintiff alleges that on April 11, 2023, he informed Captain Kevin Condon about a mutual shift with a firefighter from another house planned for April 13, 2023 and it was approved. On April 12, 2023, Chris Nock, a "Senior Ladder 24 Firefighter," informed Plaintiff was the April 13 mutual was cancelled and did not state a reason for the cancellation. Id. ¶¶ 36-37. Captain Condon subsequently told Plaintiff that he "was

[2] Plaintiff notes that while Lieutenants "were typically not required to perform house watch, Ladder 24's policy was that *any* firefighter whose house tax exceeded $100 was required to work house watch shifts." Am. Compl. at 6, fn. 3 (emphasis in original).

[3] "Mutuals" are shifts "in which two firefighters exchange shifts." Id. ¶ 32.

only permitted to work Mutuals with firefighters from Engine 1/Ladder 24." Id. ¶ 38. This drastically limited his ability to do mutuals. Id. ¶ 38. Plaintiff alleges that he was never assigned a mutuals partner but a non-Black probationary firefighter named Vincent Corallo was "swiftly" assigned a new partner both times that his partner went out on medical leave and as a result, was assigned three different mutuals partners in a six-month period. Id. ¶ 39. On May 30, 2023, Plaintiff alleges that he accepted a mutuals shift with a firefighter at another Engine within his Battalion, which was allegedly permitted by the "FDNY Mutual Exchange Guidelines" which allow a firefighter to do mutuals with firefighters in their Battalion, not just their Engine or Ladder. Id. ¶¶ 40-41. On May 31, 2023, Lieutenant Doug Lopez gave Plaintiff a command discipline "for accepting the Mutuals shift from someone in a different Engine." Id. ¶ 41. Plaintiff claims that Capt. Condon "arbitrarily" told [him] that he could not accept mutuals from another ladder. Id. On June 5, 2023, Plaintiff texted Lt. Lopez requesting a 'further investigation and interview with borough command' into how the Mutuals policy was being applied differently to him than to other non-Black firefighters before he decided whether to 'elect or accept or reject any penalty.'" Id. ¶ 42. Lt. Lopez told Plaintiff that he would "pass the information to the captain" but "upon information and belief" his message was never related to Capt. Condon. Id. ¶¶ 43-44. As a result of the command discipline, Plaintiff was subjected to an FDNY Bureau of Investigations and Trials ("BITS") hearing on June 20, 2023, wherein he "attempted to bring up that he was being discriminated against and hazed by those in his Engine/Ladder and at the FDNY" but "was told that the BITS hearing was not for doing so" and "was never given any punishment for this command discipline." Id. ¶ 45.

On May 10, 2023, Plaintiff allegedly spoke to Capt. Condon about taking FMLA leave to care for his daughter, who has a blood disorder. Id. ¶ 47. Capt. Condon stated that he

"should not be asking" about taking leave because he "just started." Plaintiff was ultimately approved for intermittent FMLA leave from May 22, 2023, to May 21, 2024, id. ¶¶ 47-48, but he was "prevented from being able to take FMLA leave when needed" and "his requests were treated as discretionary and subject to approval." Id. ¶ 49. In or around June 3, 2023, he "requested a day off to care for his daughter, who was having a pain crisis associated with her Sickle Cell disease" and Lt. Robert J. Derowitz told him "that he would decide later whether to approve the leave request and would let [Plaintiff] know only after making that determination." Id. It was clear that Plaintiff's requests for FMLA leave were not welcomed. Id. ¶¶ 49-50.

On or around June 8, 2023, Plaintiff spoke with Roxanne Tabar, an FDNY Equal Employment Opportunity ("EEO") attorney, and reported "the discrimination, hostility, and hazing he had been experiencing at the FDNY," including that he had been denied mutuals partners "unlike his non-Black colleagues" and that he was forced to work unpaid overtime hours as a probationary firefighter, but that "rather than guide him on how to initiate the formal EEO process" Ms. Tabar asked him if he was "sure" he wanted to file a complaint, which caused him "to fear further hazing and retaliation if he went forward with a formal complaint." Id. ¶ 51. On June 9, 2023, Plaintiff alleges that he initiated the process of filing a formal grievance with his union by sending an email to the FDNY's General Law Unit asking for "certain forms that were required to initiate the process." After not hearing back for a few days, contacted FDNY EEO attorney Nicole Benitez and requested that she proceed with formally filing his complaint of "discrimination, hostility, and hazing," which included being denied a mutuals partner and mutuals opportunities, being subject to punitive house watch shifts, and being "required to work unpaid, off-the-clock hours as a probationary firefighter." Id. ¶¶ 52-53. On January 17, 2024, four months after Mr. Payne's termination, the EEO office issued a finding of "insufficient credible and corroborating

evidence to establish that [Capt.] Condon subjected [Mr.] Payne to race discrimination and retaliation in violation of the EEO policy." Id. ¶ 54. Plaintiff alleges that "this was a completely sham investigation" because "the FDNY EEO relied on interviews of the very individuals whom Mr. Payne identified as responsible for the discrimination and hazing" and did not "give him the opportunity to respond to Captain Condon's statement or the statements of other witnesses." Id. ¶¶ 54-55. On June 12, 2023, and June 21, 2023, Plaintiff allegedly reached out to Noreen Aspromonte, Chief Personnel for the FDNY to request forms to file a grievance with his union but did not receive the forms. Id. ¶¶ 56-57.

On July 3, 2023, Plaintiff received a memorandum dated June 16, 2023, from Joseph R. Cavaretta, Acting Chief of Personnel, to Brian Goldberg, Assistant Commissioner of Civil Service Administration "requesting that [Plaintiff's] Probationary Firefighter term be extended for a six-month period, from September 28, 2023, to March 27, 2024." Id. ¶ 58. Plaintiff alleges that "[t]he only explanation he was given for this extension was that he had taken 'sick time'" which "was bogus" because he "did not take a single sick day during his time at the FDNY" but only took intermittent FMLA leave to care for his daughter. Id. ¶¶ 58-59. Plaintiff further alleges that "at the same time" he was "presented with a separate letter and asked to sign it to indicate his consent to the extension of his probation" and that "the FDNY retaliate[ed] against him by baselessly extending his probationary period." Id. ¶¶ 60-61.

Plaintiff alleges that he was "punished [] when he sought routine schedule changes" and after Lt. Lopez and the Battalion Aide approved his request to be taken off a particular day shift on July 13, 2023, Plaintiff was "immediately punished" when Battalion Chief John Porretto informed him that "he was being assigned to work from the FDNY's headquarters in downtown Brooklyn" and that "assignments to the FDNY's headquarters functioned as a punitive posting"

because at headquarters, firefighters were required to work five days a week, were not permitted to do mutuals, and "were relegated to administrative duties." Id. ¶¶ 63-64. Plaintiff alleges that he "was aware that non-Black firefighters were permitted to make schedule changes without facing discipline" because he "observed" through the shared scheduling portal that they were allowed to change their schedules "even when they did not have the amount of logged overtime that was ordinarily required to make such schedule changes." Id. ¶¶ 65-66. When Plaintiff asked Mr. Porretto who he could speak to about the change in assignment, he was directed to call Capt. Louis Capozzi from the Bureau of Personnel, who did he allegedly left a message on July 17, 2023, but "never heard back." Id. ¶ 66.

On August 14, 2023, Plaintiff allegedly received a performance evaluation that "falsely accused him of 'refus[ing] to carry his tools' on the job" and "falsely stated that [he] did not do his share of house duties." Id. ¶¶ 69-70. Plaintiff admits that "there had been one occasion in June 2023 where [he] mistakenly brought the wrong tools for a particular call." Id. ¶ 69. "[T]his notably false performance evaluation came on the heels" of his complaints and "it was abundantly clear that…the FDNY began instead to create and rely on a false 'performance' narrative to justify adverse action against him." Id. ¶ 71.

On August 18, 2023, Plaintiff allegedly submitted a written complaint to Frank Groce, FDNY Supervisor of Annuals about the "unlawful, unjust, and discriminatory treatment" but the FDNY failed to conduct a Step 1 hearing or respond to the grievance. Id. ¶¶ 72, 74. On August 30, 2023, Plaintiff submitted a second complaint to Frank Groce, in which he "went on to report in detail the numerous hours of unpaid work he was required to perform each shift" but did not receive a response. Id. ¶¶ 75, 76. Plaintiff alleges that he was summoned to a meeting with

Chief Joseph Cavaratta on September 26, 2023, where he was terminated two days before the end of his probationary period. Id. ¶ 71.

**B. History of Prior Litigation**[4]

On January 18, 2024, Plaintiff William Payne III, initiated a CPLR Article 78 special proceeding by filing a Petition with New York County Supreme Court, in which he named "NYC Fire Dept.," "THE CITY OF NEW YORK, "UNIFORMED FIRE ASSOCIATION OF NYC UNION," and "John Doe, Mentor" as Respondents. See Knutson Decl. Exh. 1 ("Article 78 Petition" or "Art. 78 Pet."). In the Article 78 Petition, Plaintiff alleges that he was "terminated on September 26, 2023 as a probationary firefighter…solely I allege based upon racial discrimination and retaliation of my protests of said racial discrimination, harassment against me, and retaliation for those complaints I made." Art. 78 Pet. at 1-2. Plaintiff's Article 78 Petition includes allegations that he was approved for a mutual shift on April 13, 2023, which was then cancelled, he was falsely accused of not paying his house dues, was "forced" to work unpaid overtime, received an evaluation on August 1, 2023 with "false statements," including that he refused to carry his tools, and "was denied the right and ability to do mutual tours." Id. ¶¶ 12a, 15, 16, 20, 21a, 25e.

On June 11, 2024, Respondent City of New York answered Plaintiff's Article 78 Petition and provided evidentiary documentation in support of its answer that included Plaintiff's BITS termination memorandum, the FDNY Mutual Exchange Guidelines, the Company Mutual

[4] Defendant relies upon the exhibits annexed to the Declaration of Assistant Corporation Counsel Madeleine A. Knutson in Support of Defendant's Motion to Dismiss the Amended Complaint, dated April 7, 2026, ("Knutson Decl."). In deciding a motion to dismiss pursuant to FRCP 12(b)(6), the Court may properly consider and take judicial notice of public records. See Williams v. N.Y. City Hous. Auth., 816 Fed. Appx. 532, 534 (2d Cir. 2020) ("[t]he district court did not err in considering [plaintiff's] Article 78 petition and state court decision because they were public records, and thus appropriate for judicial notice.") (internal citation omitted); see also Kavowras v. N.Y. Times Co., 328 F.3d 50, 57 (ed Cir. 2003) ("Judicial notice may be taken of public filings.").

Policy, the EEO Memorandum concerning Plaintiff's EEO complaint, the FDNY Command Discipline Guidelines, the command discipline issued to Plaintiff, the transcript of Plaintiff's BITS proceeding on June 20, 2023, Plaintiff's termination letter, the detail slip describing Plaintiff's administrative assignment, and an Affirmation of Frank Groce. See Knutson Decl. Exhs. 3-14.

On January 9, 2025, the Honorable Nicholas W. Moyne issued a Decision and Order dismissing Plaintiff's Article 78 Petition. See Knutson Decl. Exh. 2 ("Decision"). The Court held that "respondents have established a rational, good faith basis for petitioner's termination," noting that "[t]he record is replete with evidence of petitioner's insubordination and failure to follow direct orders from his commanding officer" and "[t]he inability to follow the chain of command and direct orders is a legitimate non-discriminatory ground for discharge." Decision at 2-3. The Court also specifically addressed Plaintiff's claims of racial discrimination, retaliation, and hostile work environment, and concluded that "there was insufficient credible evidence of disparate treatment" because despite Plaintiff alleging "he was treated differently than white firefighters, the investigation found that white probationary firefighters were subject to the same restrictions and only worked outside mutuals when they received the requisite officer approval." Id. at 3. The Decision continues to conclusively state that Plaintiff "fail[ed] to establish a causal connection between his termination and his EEO complaints," in part because the record indicates the disciplinary process was initiated prior to Plaintiff's protected activity. Id. Finally, the Court found any claims of "harassment" about comments, including those about Plaintiff's "house tax," do not rise to the level of a hostile work environment and "there is also no indication that they involved management or supervisors or were racially biased." Id.

## STANDARD OF REVIEW

A plaintiff must plead sufficient facts "to state a claim for relief that is plausible on its face" and from which the court can "draw the reasonable inference that the defendant is liable

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp v. Twombly, 550 U.S. 544, 557 (2007)). Pleading facts that are merely consistent with a defendant's liability, without additional factual enhancement, "stops short of the line between possibility and plausibility of entitlement to relief." Id. at 697 (citing Twombly, 550 U.S. at 557). A plaintiff must plead facts sufficient to demonstrate "more than a sheer possibility that a defendant has acted unlawfully. . . [and] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. For employment discrimination claims, a plaintiff must meet the "minimal burden of showing facts suggesting an inference of discriminatory motivation" to satisfy the prima facie requirements at the pleading stage. See Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL AND RES JUDICATA

Plaintiff is collaterally estopped from relitigating the circumstances surrounding the termination of his probationary employment with the FDNY. Collateral estoppel, or issue preclusion, bars parties from "relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir. 2002). Under federal law, "[c]ollateral estoppel applies when: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party [against whom collateral estoppel is being asserted] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Brandon v. NPG Records, Inc., 840 F. App'x 605, 607 (2d Cir. 2020) (internal citations omitted). "When it applies, collateral estoppel divests a federal district

court of subject matter jurisdiction over the precluded issue." Sank v. City Univ. of N.Y., 2011 U.S. Dist. LEXIS 125016, *9 (S.D.N.Y. Oct. 27, 2011) (citing Carmellino v. Dist. 20 of N.Y.C. Dep't of Educ., 2004 U.S. Dist. LEXIS 5754 (S.D.N.Y. Apr. 6, 2004)).

First, Plaintiff raised identical issues in his prior Article 78 proceeding, alleging, among other things, that "but for racial discrimination [he] should not have been terminated," that he was not paid for overtime, that false statements were made in his performance evaluation, and that he was retaliated against for making multiple complaints of "unfair hazing, harassment, hostile work environment, discrimination, (racial), unpaid overtime." Art. 78 Pet. ¶¶ 6, 15-16, 20, 24d. The factual allegations in Plaintiff's Amended Complaint track these same issues. See e.g., Am. Compl. ¶ 16 ("the FDNY subjected [Plaintiff] to disparate treatment based on his race and retaliated against him for his engagement in protected activity when he complained of discrimination and wage-and-hour violations"); ¶ 25 (Plaintiff "was denied the right and ability to do Mutuals Tours"); ¶ 68 (Plaintiff "received a performance evaluation that falsely accused him of 'refus[ing] to carry his tools' on the job"); ¶ 75 (Plaintiff's complaint "went on to report in detail the numerous hours of unpaid work he was required to perform each shift").

Second, these issues were actually litigated and decided in the prior proceeding. The Court conclusively found that Plaintiff's "inability to follow the chain of command and direct orders is a legitimate, non-discriminatory ground for discharge." Decision at 2-3. In the Decision, the Court, after considering the extensive record before it, found "insufficient credible evidence of disparate treatment," no indication that any of Plaintiff's claims regarding harassment were racially based (nor did they rise to the level of a hostile work environment), and that Plaintiff did not establish a causal connection between his termination and protective activity, noting that "[a]n employer's continuation of a disciplinary course of conduct begun before a complaint is made does

not constitute retaliation." Decision at 3. The Court even summarized Plaintiff's Article 78 proceeding as alleging "that his termination was the result of racial discrimination, a hostile work environment, and retaliation…", which clearly highlights the parallel nature of Plaintiff's allegations in the Amended Complaint. As such, in issuing its Decision, the Court necessarily decided the exact issues presented in this instant action. See Taylor v. City of New York Admin. for Children Servs., 2021 U.S. Dist. LEXIS 60978, *11 (S.D.N.Y. Mar. 30, 2021) (dismissing plaintiff's federal action when the Court in his prior Article 78 proceeding "found that the termination was neither arbitrary nor capricious" and noting that "the latter determination necessarily constitutes a determination that the termination was not the product of retaliation.).

Third, there can be no doubt that the Plaintiff had a full and fair opportunity to litigate these issues. See Ayazi v. New York City Bd. of Educ., 2004 U.S. Dist. LEXIS 34452, *17 (E.D.N.Y. Sept. 13, 2004) ("There is no question that the plaintiff had a full and fair opportunity to litigate. In general, an Article 78 proceeding provides plaintiffs with a full and fair opportunity to pursue a claim") (collecting cases).

Finally, the resolution of these issues, namely Plaintiff's allegations of discrimination, retaliation, and hostile work environment, were necessary to support a valid and final judgment on the merits in his Article 78 proceeding. Indeed, the state court could not have affirmed that "respondents have established a rational, good faith basis for petitioner's termination," finding a "legitimate, non-discriminatory ground for discharge" without necessarily rejecting Plaintiff's allegations that his termination was discriminatory or retaliatory. See Decision at 2-3; see also Richardson v. City of New York, 2004 U.S. Dist. LEXIS 2562, *3-4 (S.D.N.Y. Feb. 20, 2004) ("As this Court previously has held, where an Article 78 petition seeks annulment of a employment disciplinary decision on the ground that it was discriminatory or retaliatory, a

determination by the state courts that the decision was supported by substantial evidence 'necessarily implies rejection of [the] claim that [the] termination was discriminatory and retaliatory' and thus forecloses a similar contention in a subsequent federal action.").

The fact that Plaintiff now seeks relief in federal court does not rescue his claims from dismissal. It is well settled that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 81 (1984).

In addition, Plaintiff's claims are barred by *res judicata*. The doctrine of *res judicata*, or claim preclusion, bars re-litigation if: (1) the previous action involved an adjudication on the merits; (2) the previous action involved the same parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000). "Whether a judgment in a prior action will have preclusive effect depends in part on whether the same transaction or a series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Brodsky v. N.Y.C. Campaign Fin. Bd., 796 F. App'x 1, 3-4 (2d Cir. 2019) (internal citations omitted).

There can be no doubt that Plaintiff's Article 78 proceeding was decided on the merits, that the same parties were involved, namely the City of New York, and that Plaintiff's claims could have been raised previously. Plaintiff filed his Article 78 Petition on January 18, 2024, after being terminated effective September 26, 2023. It necessarily follows that *all facts* pertaining to Plaintiff's probationary employment with the FDNY had occurred by the time Plaintiff's Article 78 Petition had been filed and were not only present in the prior litigation, but decided, and thus could have been raised previously.

Based on the foregoing, all of Plaintiff's claims are barred by collateral estoppel and/or *res judicata*, and should be dismissed, with prejudice.

**POINT II**

**PLAINTIFF OTHERWISE FAILS TO STATE DISCRIMINATION AND RETALIATION CLAIMS UNDER SECTION 1983, THE SHRL, AND THE CHRL**

Notwithstanding that Plaintiff is fully precluded from bringing all the claims in this action, as discussed in *Point I*, Plaintiff's discrimination and retaliation claims under Section 1983, the SHRL, and the CHRL otherwise fail to state a claim.

**A. Section 1983**

Plaintiff brings a claim of "Discrimination and Harassment in Violation of Section 1983," alleging that "Plaintiff was subjected to unequal terms and conditions of employment on the basis of race, including *inter alia*, being denied a mutuals partner while other non-Black probationary firefighters were assigned mutuals partners; being denied mutual opportunities and subjected to differential restrictions on mutuals; being targeted with punitive and excessive 'house watch' assignments; and being subjected to false and exaggerated accusations concerning his performance and conduct." Am. Compl. at 16, ¶ 84.

"To defeat a motion to dismiss a race discrimination claim under § 1983, a plaintiff 'must plausibly allege that (1) the employer took adverse action against him, and (2) his race . . . was a motivating factor in the employment decision.'" Myers v. Doherty, 2022 U.S. App. LEXIS 26982, *3 (2d Cir. 2022) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87-88 (2d Cir. 2015)). "A plaintiff may allege either facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Id. (internal quotations omitted) (quoting Vega, 801 F.3d 72 at 88). Here, Plaintiff does neither.

Plaintiff's Amended Complaint pleads no plausible factual allegations that any of the FDNY's employment actions were motivated by Plaintiff's race. Instead, the Amended Complaint relies on conclusory allegations which are not entitled to the presumption of truth and insufficient to state a claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (noting that court is not required to accept as true a legal conclusion couched as a factual allegation); see also Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011). Plaintiff summarily concludes that he was "subjected [] to disparate treatment based on his race," Am. Compl. ¶ 16, yet no pleaded facts point in that direction.

The Amended Complaint notably includes no allegations of any verbal comments indicating that Plaintiff's race was a factor in the FDNY's employment decisions or pertaining to Plaintiff's protected group at all. See Myers v. Doherty, 2022 U.S. App. LEXIS 26982, *4 (2d Cir. 2022) ("An inference of discriminatory intent may arise from an employer's invidious comments about others in the employee's protected group."). Plaintiff also fails to adequately allege that similarly situated employees of a different race were treated more favorably. See id. ("A plaintiff may also support an inference of racially discriminatory intent by demonstrating that similarly situated employees of a different race were treated more favorably, but those employees must be similarly situated in all material respects."). Plaintiff's allegation that a white firefighter, Lieutenant Hughs, had a higher house tax balance than Plaintiff but was not required to work a house watch shift is insufficient to allege discriminatory intent because a senior firefighter with the rank of Lieutenant is decidedly not similarly situated to Plaintiff, a recently hired probationary employee. See Am. Compl. ¶ 30, fn 3. Similarly, Plaintiff's attempts to allege that non-Black firefighters were assigned mutuals partners is insufficient because he does not allege that these

individuals were similarly situated in *all material respects*, and these allegations are therefore insufficient to raise an inference of discriminatory intent.

Plaintiff's Section 1983 retaliation claims similarly fail. "For a Section 1983 retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." Butts v. Kelch, 2025 U.S. App. LEXIS 30088, *4 (2d Cir. 2025) (quoting Vega, 801 F.3d at 91). Here again, Plaintiff fails to adequately allege the required causal connection between his complaints of discrimination and the employment actions that are the subject of this action. In fact, and as pointed out by the state court in the Decision in Plaintiff's Article 78 proceeding, the disciplinary action initiated because of Plaintiff's disregard for a direct order from a commanding officer concerning the protocol for working mutual shifts preceded his complaints of discrimination, and are therefore insufficient to raise the requisite causal connection. See Am. Compl. ¶ 51 (Plaintiff contacted FDNY EEO on or around June 8, 2023); ¶ 41 (On May 31, 2023, Plaintiff was issued a command discipline); see also Decision at 3 ("[a]n employer's continuation of a disciplinary course of conduct begun before a complaint is made does not constitute retaliation"); see also Europe v. Equinox Holdings, Inc., 2022 U.S. Dist. LEXIS 163254, *25 (S.D.N.Y. Sept. 8, 2022) ("An employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct.") (internal quotations omitted).

Because Plaintiff fails to show facts suggesting an inference of discriminatory motivation, his Section 1983 race discrimination and retaliation claims must be dismissed. See

Butts, 2025 U.S. App. LEXIS 30088 at *2-3 (Section 1983 discrimination and retaliation claims were properly dismissed where plaintiff did not meet her minimal burden of showing facts suggesting an inference of discrimination and did not "plausibly allege[] a causal connection between the alleged protected activity and any alleged adverse employment actions.").

**B. SHRL and CHRL**

Plaintiff's allegations are also insufficient to state claims under the SHRL or CHRL.[5] While SHRL and CHRL claims require an independent analysis from federal claims and the CHRL generally "creates a lower threshold for actionable conduct," a plaintiff must still show that he was treated "less well, at least in part for a discriminatory reason." Shankar v. Ankura Consulting Grp., LLC, 2021 U.S. Dist. LEXIS 151098, *18 (S.D.N.Y. Aug. 11 2021) (internal quotations omitted). Critically, "the plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013). "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that []he took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.." Small v. N.Y. City Dep't of Educ., 650 F. Supp. 3d 89, 92 (S.D.N.Y. 2023).

Plaintiff fails to meet even these lower thresholds, for the same reasons as above: failure to sufficiently allege discriminatory motive and the impossibility that discipline initiated before he opposed discrimination could be retaliatory for an as-yet to be made EEO complaint. Plaintiff's conclusory statements that certain actions were taken because of his race or his various

[5] Because the SHRL was "amended to be closer to the standard of the [CHRL]," a Plaintiff's SHRL claims accruing after 2019 "rise and fall" with their CHRL claims. See Mumin v. City of New York, 760 F. Supp. 3d 28, 44 (S.D.N.Y. 2024) (internal citations omitted). As such, Plaintiff's SHRL claims will be analyzed with CHRL claims herein.

complaints are legal conclusions insufficiently supported by his factual allegations. See Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("factual allegations must be sufficient to support necessary legal conclusions").

Based on the foregoing, Plaintiff's race discrimination and retaliation claims under all statutes must be dismissed.

## POINT III

## PLAINTIFF FAILS TO STATE A CLAIM FOR FLSA RETALIATION

Plaintiff brings a claim for "Retaliation in Violation of the FLSA," alleging that "Defendant unlawfully retaliated against Plaintiff for complaining about FLSA violations at the FDNY" and "shortly after" Plaintiff complained internally about unpaid work hours, the FDNY terminated his employment. Am. Compl. at 19, ¶¶ 97-100. Putting aside that this claim constitutes nothing more than a new legal theory on a set of facts already adjudicated and decided on the merits, which is insufficient to overcome claim preclusion, Davis v. Norwalk Econ. Opportunity Now, Inc, 534 Fed. Appx. 47, 49 (2d Cir. 2013), Plaintiff otherwise fails to state a claim under the FLSA.

"FLSA provides that it is 'unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [FLSA].'" Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010) (quoting 29 U.S.C. § 215(a)(3)). "It is possible to state an anti-retaliation claim under the FLSA without proving an actual violation of the FLSA." Marcotte v. City of Rochester, 677 Fed. Appx. 723, 726 (2d Cir. 2017) (internal citation omitted). "To do so, however, the claimant must show that that 'a reasonable employer' could find that h[is] complaint would fall under the scope of the FLSA's protection." Id.

Plaintiff alleges that "on or around June 8, 2023," he spoke with an FDNY EEO attorney and included in his complaint "the unpaid overtime hours he was forced to work as a probationary firefighter."[6] Am. Compl. ¶ 51. Even assuming, without conceding, that this complaint was "sufficiently clear" for a reasonable employer to understand it as an assertion of rights protected by FLSA, Greathouse v. JHS Sec. Inc., 784 F.3d 105, 107 (2d Cir. 2015), Plaintiff again faces the same causal connection hurdle that is fatal to all his claims.

FLSA prohibits discharging or in any other manner discriminating against an employee **because** such employee has filed a complaint. See 29 U.S.C. § 215(a)(3) (emphasis added). Here again, Plaintiff's complaint was made *after* Plaintiff arranged to work a mutual shift with a firefighter at another Engine, in direct insubordination of an order from Capt. Condon to only work mutuals with firefighters in Engine 1/Ladder 24, which subsequently led to the discipline prior to his termination. Am. Compl. ¶¶ 38, 41, 45. Plaintiff's allegations provide no factual support for his claim that he was terminated as a result of complaining about alleged wage and hour violations. As such, Plaintiff's FLSA retaliation claim must also be dismissed.

## POINT IV

## PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FMLA

Notwithstanding that Plaintiff is collaterally estopped from relitigating the circumstances of his termination because it has been adjudicated that there was non-discriminatory reason for his termination, as discussed in *Point I*, *supra*, Plaintiff otherwise fails to state a claim for FMLA retaliation.

[6] Plaintiff's allegation that "[i]n a call with a union attorney named Nicholas Papain after his termination" he spoke about "the issue of unpaid work," Am. Compl. ¶ 20, fn. 2, is irrelevant to this claim because it, admittedly, occurred after his termination.

"The FMLA gives eligible employees an 'entitlement' to twelve workweeks per year of unpaid leave 'because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 174 (2d Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)). "The anti-retaliation provisions of the FMLA prohibit employers from "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." See Dennis v. Ultimus Fund Sols., LLC, 2021 U.S. Dist. LEXIS 152177, *8 (E.D.N.Y. Aug. 12, 2021)

Plaintiff alleges that he was approved for intermittent FMLA leave to care for his daughter from May 22, 2023, to May 21, 2024, but that Defendant "retaliated against [him] for engaging in protected activity by lawfully exercising his FMLA rights by *inter alia*, extending his probationary period for taking FMLA leave." Am. Compl. ¶¶ 47-48, 121. Plaintiff further alleges that "the timing and nature of Defendant's conduct establish a direct and causal connection" between his protected activity and the alleged retaliatory treatment. Id. ¶ 122. However, this vague and conclusory statement is insufficient to establish that his termination occurred under circumstances giving rise to an inference of retaliatory intent. Achille v. Chestnut Ridge Transp., Inc., 584 Fed. Appx. 20, 22 (2d Cir. 2014) ("to establish a prima facie case of FMLA retaliation, a plaintiff is required to show that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.") (internal quotations omitted). As such, Plaintiff's FMLA retaliation claim must also be dismissed.

## POINT V

## PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE FURTHER AMENDMENT WOULD BE FUTILE

Plaintiff's Amended Complaint still fails to state a claim and it is clear that the facts of Plaintiff's termination from probationary employment with the FDNY *cannot* state a claim because such termination has already been adjudicated on the merits in an Article 78 proceeding in which the Court found a rational, good faith basis for Plaintiff's termination and unequivocally stated that "[t]he record is replete with evidence of the petitioner's insubordination and failure to follow direct orders from his commanding officer." Decision at 2. As such, further amendment would be futile. See Rodriguez v. N.Y. State Dept of Parole, 2019 U.S. Dist. LEXIS 219049, *49 (S.D.N.Y. Dec. 20, 2019) (allowing plaintiff to replead claims barred by collateral estoppel would be futile because plaintiff already had a "full and fair opportunity to litigate" those claims in prior proceedings); see also Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

## CONCLUSION

Based on the foregoing, Defendant respectfully requests the Court dismiss the Amended Complaint, with prejudice, and grant any such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 9, 2026

**STEVEN BANKS**
Corporation Counsel of the
City of New York
*Attorney for Defendant*
100 Church Street, Room 2-142
New York, New York 10007
(212) 356-2445

By: */s/ Madeleine A. Knutson*
Madeleine A. Knutson, Esq.
Assistant Corporation Counsel

## CERTIFICATE OF COMPLIANCE

Counsel of Record hereby certifies that pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the enclosed memorandum of law contains approximately 6,717 words, which is less than the total words permitted by the rules of the Court. Counsel relies on the word count function of the computer program used to prepare this brief.

Dated: New York, New York
April 9, 2026

**STEVEN BANKS**
Corporation Counsel of the
City of New York
*Attorney for Defendant*
100 Church Street, Room 2-142
New York, New York 10007
(212) 356-2445

By: /s/ Madeleine A. Knutson
Madeleine A. Knutson, Esq.
Assistant Corporation Counsel