UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
WILLIAM PAYNE III,

Plaintiff, Case No. 7:25-cv-8028-NSR

-v-

THE CITY OF NEW YORK,

Defendant.
---------------------------------------------------------------- x

**PLAINTIFF WILLIAM PAYNE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CITY OF NEW YORK'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Tanvir H. Rahman
Gabrielle Rosen Harvey
**FILIPPATOS PLLC**
199 Main Street, Suite 800
White Plains, New York 10601
T/F: 914.984.1111, ext, 505
trahman@filippatoslaw.com
grosenharvey@filippatoslaw.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

STATEMENT OF RELEVANT FACTS ........ 2

A. Plaintiff's Employment with the FDNY ........ 2

B. Plaintiff is Required to Work Significant Unpaid, Off-the-Clock Hours ........ 3

C. Plaintiff Complains About Unpaid Work and Wage Violations ........ 3

D. THE FDNY Interferes With, and Discourages Plaintiff from Exercising, His Right to Take Approved FMLA Leave ........ 4

E. The FDNY Extends Plaintiff's Probation After He Takes Protected FMLA Leave ........ 5

F. After Plaintiff Complains, the FDNY Escalates Its Poor Treatment of Him and Terminates His Employment ........ 5

PROCEDURAL BACKGROUND ........ 6

STANDARD ........ 7

ARGUMENT ........ 8

A. Plaintiff's FMLA and FLSA Retaliation Claims Are Not Barred by Collateral Estoppel . 8

i. Plaintiff's FMLA Retaliation Claim ........ 9

ii. Plaintiff's FLSA Retaliation Claim ........ 10

B. Plaintiff's FLSA and FMLA Retaliation Claims Are Not Barred by Res Judicata ........ 12

C. Plaintiff States a Plausible Claim for Retaliation in Violation of the FLSA ........ 13

D. Plaintiff States a Plausible Claim for FMLA Retaliation ........ 16

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Cases**

*Abdelal v. Kelly*,
726 F. App'x 8, 11 (2d Cir. 2018) ........ 8, 10

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ........ 7

*Blake v. Recovery Network of Programs, Inc.*,
665 F. Supp. 3d 39, 45 (D. Conn. 2023) ........ 16

*C.C. v. Google, LLC*,
No. 24 Civ. 7811 (PAE), 2025 U.S. DIST LEXIS 257059, at *30 (S.D.N.Y. July 15, 2025) ..... 16

Davidson v. Capuano,
792 F.2d 275, 278 (2d Cir. 1986) ........ 13

*Dennis v. Ultimus Fund Sols., LLC*,
No. 20-CV-2813 (NGG) (AYS), 2021 U.S. Dist. LEXIS 152177, at *8 (E.D.N.Y. Aug. 12, 2021) ........ 17

*Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*,
691 F.3d 134, 152 (2d Cir. 2012) ........ 17, 18

*Greathouse v. JHS Sec, Inc.*,
784 F.3d 105, 115-16 (2d Cir. 2015) ........ 13

*Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*,
No. 20 Civ. 8037 (JPC), 2023 WL 3764823, at *51-52 (S.D.N.Y. June 1, 2023) ........ 14

*In re Initial Pub. Offering Sec. Litig.*,
383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) ........ 7

*Kirkland-Hudson v. Mount Vernon City Sch. Dist.*,
665 F. Supp. 3d 412, 496 (S.D.N.Y. 2023) ........ 18

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
274 F. 3d 706, 730 (2d Cir. 2001) ........ 8

*Littlejohn v. City of New York*,
795 F.3d 297, 306, 311 (2d Cir. 2015) ........ 16

*Marcotte v. City of Rochester*,
677 F. App'x 723, 726 (2d Cir. 2017) ........ 13

*Menaker v. Hofstra Univ.*,
935 F.3d 20, 30 (2d Cir. 2019) ........ 7

*Millea v. Metro-North R.R.*,
658 F.3d 154, 164 (2d Cir. 2011) ........ 19

*Moonsung Kim v. Lee,*
576 F. Supp. 3d 14, 30 (S.D.N.Y. 2021) ........ 11

*Mullins v. City of New York*,
634 F. Supp. 2d 373, 385 (S.D.N.Y. 2009) ........ 13

*Murray v. City of N.Y.*,
No. 23 Civ. 10031 (PAE), 2024 U.S. Dist. LEXIS 168218, at *25 (S.D.N.Y. July 26, 2024) .... 15

*Pullman v. Collins*,
No. 24-CV-1383 (KMK), 2025 U.S. Dist. LEXIS 404119, at *37 (S.D.N.Y. Sep. 18, 2025) ..... 15

*Red Fort Cap., Inc., v. Guardhouse Prods. LLC,*
397 F. Supp. 3d 456, 472 (S.D.N.Y. 2019) ........ 7

*Risco v. McHugh*,
868 F.Supp. 2d 75, 114 (S.D.N.Y. 2012) ........ 15

*Rivera v. JP Morgan Chase*,
815 F. App'x 603, 608 (2d Cir. 2020) ........ 15, 18

*Smith v. North Shore-Long Island Jewish Health Sys.,*
286 F. Supp. 3d 501, 512 (E.D.N.Y. 2018) ........ 19

*Vaughn v. City of N.Y.*,
No. 06-CV-5647 (ILG), 2010 U.S. Dist. LEXIS 50791, 2010 WL 2076926, at *14 (E.D.N.Y. May 24, 2010) ........ 19

*Warmin v. N.Y.C. Dep't of Educ.*,
No. 16 Civ. 8044 (KPF), 2018 U.S. Dist. LEXIS 47518, at *29 (S.D.N.Y. Mar. 22, 2018).... 9, 11

*Wasserman v. N.Y.C. Dep't of Educ.*,
No. 24-cv-01719-MMG, 2025 U.S. Dist. LEXIS 225313, at *18 (S.D.N.Y. July 10, 2025)....... 16

*Wein v. N.Y.C. Dep't of Educ.*,
No. 18 Civ. 11141 (PAE), 2020 U.S. Dist. LEXIS 150136, at *31 (S.D.N.Y. Aug. 19, 2020) ... 8, 10

*Whitfield v. City of New York,*
96 F.4th 504, 523 (2d Cir. 2024) ........ 11, 12, 13

**<u>Statutes</u>**

29 U.S.C. § 215(a)(3) ........ 13

29 U.S.C. § 216(b) ........ 12

29 U.S.C. § 2617(a) ........ 12

Plaintiff William Payne III submits this memorandum of law in opposition to Defendant The City of New York's (the "City") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). Dkt. 18 (the "Motion"). For the foregoing reasons, Defendant's Motion should be denied.

**PRELIMINARY STATEMENT**

Plaintiff William Payne III brings this action because the City of New York, through the Fire Department of the City of New York ("FDNY"), treated him differently as a Black probationary firefighter, punished him after he complained about discrimination, and terminated him shortly after he asserted protected rights. Plaintiff alleges that while assigned to Ladder 24, he was denied the same mutual-shift opportunities afforded to non-Black probationary firefighters, subjected to punitive and excessive house watch assignments, required to work unpaid off-the-clock hours, discouraged from taking approved Family and Medical Leave Act ("FMLA") leave, and then targeted after he complained about discrimination and unpaid work, and attempted to assert his FMLA rights.

The City's Motion attempts to avoid those allegations by recasting this case as nothing more than an attempt to relitigate Plaintiff's Article 78 proceeding. *See* Rahman Decl. Ex. 1 ("Article 78 Petition" or "Art. 78 Pet."). But the Article 78 court did not and could not decide all of Mr. Payne's claims now before this Court. *See* Rahman Decl. Ex. 2 ("Article 78 Decision"). The Article 78 Court did not decide whether the City retaliated against Plaintiff for complaining about unpaid work in violation of the Fair Labor Standards Act ("FLSA"), and it did not decide whether the City used Plaintiff's FMLA leave as a negative factor when it extended his probation and subsequently terminated his employment.

Nor do the City's Rule 12(b)(6) arguments justify dismissal of Plaintiff's FLSA and FMLA retaliation claims. Plaintiff alleges that he repeatedly complained about being forced to perform unpaid, off-the-clock work, including in a detailed written complaint on August 30, 2023, and that the FDNY terminated him less than four weeks later. Plaintiff further alleges that after he was approved for intermittent FMLA leave to care for his ill daughter, the FDNY discouraged his leave, treated its legal obligation to respect his right to take approved leave as discretionary, and extended his probation because he purported took "sick time," even though he had taken no sick days and had only taken protected FMLA leave.

On the facts pleaded, Plaintiff has more than plausibly alleged that the City retaliated against him for complaining about unpaid overtime and off-the-clock work and used his protected FMLA leave as a negative factor in extending his probation and ultimately terminating his employment. For these reasons and those set forth below, the City's motion should be denied.

## STATEMENT OF RELEVANT FACTS

### A. Plaintiff's Employment with the FDNY

Plaintiff William Payne III is a Black man who was employed by the FDNY from March 28, 2022, until his termination on September 26, 2023. *See* FAC ¶¶ 14-15, 78. After graduating from the FDNY Academy on or about August 9, 2022, Plaintiff was assigned to Ladder Company 24 in Midtown Manhattan as a probationary firefighter. See *id.* ¶ 15. Plaintiff's probationary period was scheduled to last eighteen months. *See id.*

Throughout his employment, Plaintiff performed his duties in an exemplary manner and received a unit citation for his work. *See id.* ¶ 16. Nevertheless, while assigned to Ladder 24, Plaintiff was treated differently than non-Black probationary firefighters, including with respect

to mutual-shift opportunities, schedule flexibility, house watch assignments, and discipline. *See id.* ¶¶ 21-46, 62-71.

**B. <u>Plaintiff is Required to Work Significant Unpaid, Off-the-Clock Hours</u>**

From the beginning of his FDNY employment, Plaintiff was required to perform unpaid work. While at the FDNY Academy, Plaintiff and his peers were required to arrive at the auditorium by 5:30 a.m., even though the first training did not begin until 7:00 a.m. *See id.* ¶ 18. Plaintiff was also required to remain at the Academy long after the last training ended at 3:55 p.m., and he was generally not dismissed until 5:30 p.m. or later. *See id.* Plaintiff was not compensated for time worked before 7:00 a.m. or after 3:55 p.m. *See id.*

After graduating from the Academy, Plaintiff encountered the same unpaid work practices at Ladder 24. Probationary firefighters were regularly required to report to the firehouse two hours before each shift, and that time was not compensated. *See id.* ¶ 19. As a result, Plaintiff was required to work several uncompensated hours per shift. *See id.* This practice continued every, if not virtually every, working day throughout Plaintiff's probationary period. *See id.* ¶ 20.

**C. <u>Plaintiff Complains About Unpaid Work and Wage Violations</u>**

Plaintiff repeatedly complained internally about the unpaid overtime and off-the-clock work he was required to perform. On or around June 8, 2023, Plaintiff spoke with FDNY Equal Employment Opportunity ("EEO") attorney Roxanne Tabar and reported, among other things, the unpaid overtime hours he was forced to work as a probationary firefighter and the uncompensated hours he routinely worked each shift. *See* FAC ¶ 51.

The next day, on June 9, 2023, Plaintiff initiated the process of filing a formal grievance by sending an email to the FDNY's General Law Unit. *See* id. ¶ 52. In this email, Plaintiff formally complained about the discriminatory and hazing conduct he was experiencing, including the

unpaid overtime and off-the-clock work he was required to perform as a probationary firefighter. *See id*. A few days later, after not hearing back from the General Law Unit, Plaintiff contacted another FDNY EEO attorney, Nicole Benitez, and again reported that he was required to work unpaid, off-the-clock hours. *See id*. ¶ 53.

On August 30, 2023, Plaintiff submitted a second written complaint to FDNY Supervisor of Annuals Frank Groce. *See id*. ¶ 75. In that complaint, Plaintiff reported in detail the numerous hours of unpaid work he was required to perform each shift, including being "denied compensation for time worked," "specifically overtime," and being "forced [to] work with payment being withheld." *See id*. Despite Plaintiff's repeated complaints, the FDNY failed to respond to or investigate Plaintiff's complaints about unlawful compensation practices. *See id*. ¶¶ 76-77.

### D. THE FDNY Interferes With, and Discourages Plaintiff from Exercising, His Right to Take Approved FMLA Leave

On or around May 10, 2023 (more than a year after he began working at the FDNY Academy), Plaintiff spoke with Captain Kevin Condon about his intent to take FMLA leave to care for his daughter, who has a blood disorder. *See* FAC ¶ 47. Rather than provide information about how to formally request leave, Captain Condon discouraged Plaintiff, telling him that because he had "just started," he "should not be asking" about taking leave. *See id*.

Plaintiff was ultimately approved to take intermittent FMLA leave from May 22, 2023, through May 21, 2024. *See id*. ¶ 48. However, even after his FMLA leave request was approved, the FDNY treated its obligation to grant Plaintiff's requests to use that leave as discretionary and subject to approval. *See id*. ¶ 49. For example, in or around June 2023, when Plaintiff requested a day off to care for his daughter during a pain crisis associated with her Sickle Cell disease, Lieutenant Robert J. Derowitz told Plaintiff that he would decide later whether to approve the leave

request. *See id*. Plaintiff understood from these interactions that his requests for FMLA leave were not welcomed at Ladder 24. *See id*. ¶ 50.

**E. The FDNY Extends Plaintiff's Probationary Period After He Exercises His FMLA Rights**

On July 3, 2023, the FDNY presented Plaintiff with a memorandum addressed to Joseph Cavarretta, Acting Chief of Personnel, consenting to the extension of his probationary firefighter term by six months, from September 28, 2023, to March 27, 2024. *See* FAC ¶ 58. The only explanation the FDNY provided for the extension was that Plaintiff had taken "sick time." *See id*. That explanation was false. Plaintiff had not taken a single sick day during his time at the FDNY. *See id*. ¶ 59. Indeed, the only leave he had taken was intermittent FMLA leave to care for his daughter. *See id*. At the same time, Plaintiff was presented with a separate letter and asked to sign it to indicate his consent to the extension of his probation. *See id*. ¶ 60. Thus, rather than address his protected complaints and leave-related concerns, the FDNY retaliated against him by baselessly extending his probationary period. *See id*. ¶ 61.

**F. After Plaintiff Complains, the FDNY Escalates Its Poor Treatment of Him and Terminates His Employment**

The FDNY failed to meaningfully investigate Plaintiff's discrimination, hazing, and unpaid work complaints. *See* FAC ¶¶ 54-57, 74, 76-77. Instead, the FDNY began to build a false performance narrative against Plaintiff. *See id*. ¶¶ 68-71. On August 14, 2023, the FDNY issued Plaintiff a performance evaluation falsely accusing him of refusing to carry his tools and falsely stating that he did not do his share of house duties. *See id*. ¶¶ 68-70.

On August 18, 2023, Plaintiff submitted a written complaint to Mr. Groce regarding the unlawful, unjust, and discriminatory treatment he had experienced within the FDNY. *See id*. ¶ 72. In that complaint, Plaintiff reported that non-African American members of Ladder 24 had been

consistently allowed to do mutuals while he had been denied mutual opportunities despite meeting the requirements. *See id.* ¶¶ 72-73. However, the FDNY did not conduct the required Step 1 hearing or respond to the grievance. *See id.* ¶ 74.

On September 30, 2023, Plaintiff submitted a second written complaint to Mr. Groce. *See id.* ¶ 75. This time, Plaintiff reported in detail the numerous hours of unpaid work he was required to work each shift. *See id.* Plaintiff wrote that this practice "violates the FDNY Policies and Procedures and constitutes an abuse of power within the firehouse[.]" *See id.* Once again, the FDNY failed to meaningfully respond to or investigate Plaintiff's complaint. *See id.* ¶ 76.

On September 26, 2023, less than four weeks after Plaintiff's August 30 written complaint about unpaid work, Plaintiff was summoned to a meeting with Chief Joseph Cavaratta and terminated effective immediately. *See* FAC ¶ 78. No reason was offered for the termination. *See id.* Notably, after Plaintiff's termination, in a call with a union attorney named Nicholas Papain, Plaintiff again complained about working unpaid hours at the FDNY. *See id.* ¶ 20 n.2. In response, Mr. Papain said, "Yeah, so I mean, that's a, that's a global issue, right. I mean, that's not unique to you." *See id.*

## **PROCEDURAL BACKGROUND**

On September 26, 2025, Plaintiff filed a complaint in this Court alleging violations of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec Law §§ 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 et seq. ("NYCHRL"), the Fair Labor Standards Act ("FLSA"), and the New York Labor Law ("NYLL"). *See* Dkt. 1. On December 22, 2025, in accordance with Rule 3(A)(ii) of Your Honor's Individual Practices in Civil Cases, Defendant requested a pre-motion conference to discuss Defendant's anticipated motion to dismiss

Plaintiff's complaint. On January 9, 2026, Plaintiff responded to Defendant's request for a pre-motion conference. *See* Dkt. 13. On January 20, 2026, the Court granted Plaintiff leave to amend his complaint. On January 30, 2026, Plaintiff filed his First Amended Complaint ("FAC"), alleging violations of Section 1983 of the Civil Rights Act of 1866, 42 U.S.C. § 1983 ("Section 1983"), the NYSHRL, the NYCHRL, the FLSA, and the Family Medical Leave Act of 1933 ("FMLA"), 29 U.S.C. §§ 2601 et seq. *See* Dkt. 18. On April 9, 2026, Defendant served Plaintiff with its Motion to Dismiss Plaintiff's FAC. *See* Defendant's Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint, *Payne v. City of New York*, No. 7:25-cv-08028 (S.D.N.Y. served Apr. 9, 2026) ("Def. Mem."). Plaintiff hereby opposes the instant motion.

**STANDARD**

A complaint will survive a motion to dismiss so long as it "contain[s] sufficient factual matter…to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In making that assessment, courts accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019). The role of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005). The court is concerned solely with the adequacy of the factual allegations in a complaint at the motion to dismiss stage, as a "party is not required to identify the substantive

legal basis for its claim." *Red Fort Cap., Inc., v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 472 (S.D.N.Y. 2019).

## ARGUMENT

### A. Plaintiff's FMLA and FLSA Retaliation Claims Are Not Barred by Collateral Estoppel

Defendant argues that Plaintiff is collaterally estopped from relitigating the circumstances surrounding his termination from the FDNY. *See* Def. Mem. at 19. However, Defendant has not met its burden of showing that the identical issues underlying Plaintiff's FMLA and FLSA retaliation claims were actually and necessarily decided in Plaintiff's Article 78 proceeding.[1] Collateral estoppel, or issue preclusion, applies only if "(1) the issue in question was *actuall*y and *necessarily* decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *See Abdelal v. Kelly*, 726 F. App'x 8, 11 (2d Cir. 2018). The party invoking collateral estoppel bears the burden of showing identity of issue. *See Kosakow v. New Rochelle Radiology Assocs.*, *P.C.,* 274 F. 3d 706, 730 (2d Cir. 2001).

Here, Defendant's argument fails because it conflates overlapping facts with identical issues actually and necessarily decided. The relevant question is not whether the Article 78 proceeding and this action both arise from Plaintiff's FDNY employment or his eventual termination. They do. The relevant question is whether the Article 78 court actually and necessarily decided the same statutory issues that control Plaintiff's FMLA and FLSA retaliation claims. It did not. The Article 78 court reviewed merely whether the FDNY had a rational, good-faith basis for terminating Plaintiff's probationary employment, and, according to Defendant's own

[1] In light of the decision of the Article 78 court, Plaintiff will not oppose the City's application to dismiss Plaintiff's race discrimination and retaliation claims under §1983, NYSHRL, and NYCHRL, i.e., the first, second, fourth, fifth, sixth, and seventh causes of action.

memorandum, addressed Plaintiff's claims of race discrimination, retaliation, and hostile work environment. *See* Def. Mem. at 9. But the Article 78 court did not decide whether Defendant used Plaintiff's FMLA leave as a negative factor in extending his probation and summarily terminating his employment, nor did it decide whether Defendant terminated Plaintiff because he complained about unpaid, off-the-clock work in violation of the FLSA.

**i. <u>Plaintiff's FMLA Retaliation Claim</u>**

Defendant cannot preclude Plaintiff's FMLA retaliation claim by relying on an Article 78 decision that never addressed the FMLA. Collateral estoppel requires identity of issues, not merely overlap in background facts. *See Abdelal,* 726 F. App'x at 11 (collateral estoppel did not bar later discrimination claims where plaintiff referenced discrimination in Article 78 petition, but Article 78 decision did not actually decide those claims); *Wein v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 11141 (PAE), 2020 U.S. Dist. LEXIS 150136, at *31 (S.D.N.Y. Aug. 19, 2020) (declining to apply collateral estoppel where, even if Article 78 petition "overtly alleged discrimination," decision "did not address or necessarily decide any claim of discrimination"); *Warmin v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 8044 (KPF), 2018 U.S. Dist. LEXIS 47518, at *29 (S.D.N.Y. Mar. 22, 2018) ("Because the Supreme Court was not presented with this allegation and did not expressly decide it, the Court cannot find the identity of issues needed for collateral estoppel to bar this claim.")

Here, there is no identity of issue because Plaintiff's FMLA retaliation claim was not presented in his Article 78 petition and was not decided by the Article 78 court. Plaintiff's Article 78 petition did not assert an FMLA violation claim, or that Plaintiff took any FMLA leave, or that protected leave was used against him to extend his probation or terminate his employment. Instead, the Article 78 Petition framed the proceeding as one "to vacate [Plaintiff's] Probationary Termination and be restored to Employment" based on "Racial Discrimination, Harassment, and

Retaliation." *See* Exhibit 1, annexed to the Declaration of Tanvir H. Rahman ("Rahman Decl."), Art. 78 Pet. at 1. Although the petition referenced that Plaintiff was offered an extension of probation "without any true explanation," *see id.* ¶ 6.a, the Article 78 court made no findings about why Plaintiff's probation was extended, whether the extension was connected to protected leave, or whether Defendant used Plaintiff's FMLA leave as a negative factor in that decision. The Article 78 decision instead addressed the distinct question of whether FDNY had a rational, good-faith basis to terminate Plaintiff based on alleged insubordination. *See* Exhibit 2, Art. 78 Decision at 2-3. Thus, even if that finding had any limited preclusive effect as to the termination rationale, it squarely does not decide whether Defendant separately retaliated against Plaintiff by extending his probation because he exercised FMLA rights. That distinction is fatal to Defendant's preclusion argument because Plaintiff's FMLA claim is more than just a challenge to the termination but is also based on a separate adverse action that the Article 78 court did not analyze. Thus, Plaintiff's FMLA claim is not barred by collateral estoppel and should not be dismissed.

**ii. <u>Plaintiff's FLSA Retaliation Claim</u>**

Plaintiff's Article 78 petition referenced unpaid overtime and the requirement that he report to work hours early without pay. *See* Exhibit 1, Art. 78 Pet. ¶¶ 16-18, 24d, 24f. However, a mere factual reference in an Article 78 petition is not the same as an issue actually and necessarily decided by the Article 78 court. *See Abdelal*, 726 F. App'x at 11 (collateral estoppel did not bar later discrimination claims where plaintiff referenced discrimination in Article 78 petition, but Article 78 decision did not actually decide those claims); *Wein*, 2020 U.S. Dist. LEXIS 150136, at

*31 (declining to apply collateral estoppel where, even if Article 78 petition "overtly alleged discrimination," decision "did not address or necessarily decide any claim of discrimination").

Defendant argues that the Article 78 court addressed Plaintiff's claims of racial discrimination, retaliation, and hostile work environment. *See* Def. Mem. at 9. The Article 78 decision itself likewise framed the case as one challenging Plaintiff's termination based on "racial discrimination, a hostile work environment, and retaliation for filing complaints with the FDNY Equal Employment Opportunity ("EEO") office." *See* Art. 78 Decision at 1. The decision did not analyze Plaintiff's FLSA claims. Thus, even if unpaid overtime appeared in the factual background of the Article 78 petition, the Article 78 court never actually and necessarily decided the FLSA retaliation issue now before this Court.

That distinction matters because Plaintiff's FLSA retaliation claim turns on a separate statutory inquiry, namely, whether Plaintiff complained about unpaid work, whether Defendant knew of those complaints, and whether Defendant there is "a causal connection" between those complaints and his termination. *See Moonsung Kim v. Lee*, 576 F. Supp. 3d 14, 30 (S.D.N.Y. 2021) (to state claim for FLSA retaliation, employee need only plausibly allege, among other things, "a causal connection between the protected activity and the adverse action"). The Article 78 court's finding that the FDNY had a rational, good-faith basis to terminate Plaintiff based on alleged insubordination does not resolve that issue. *See* Exhibit 2, Art. 78 Decision at 2-3 (finding that "respondents have established a rational, good faith basis for the petitioner's termination" because "[t]he record is replete with evidence of the petitioner's insubordination and failure to follow direct orders from his commanding officer"). A rational-basis determination that the FDNY had some lawful basis for termination is not identical to a determination that Defendant did not retaliate against Plaintiff for asserting his FLSA rights. *See Warmin*, 2018 U.S. Dist. LEXIS 47518, at *29

("The Second Circuit has held that a state court's affirmance of an employee's termination in an Article 78 proceeding does not, on its own, preclude all attacks to that termination that sound in discrimination where those issues were not raised in the state court."). Put differently, the Article 78 court found that the FDNY had a rational basis to which it could point for terminating Plaintiff; it did not decide that Plaintiff's FLSA-protected wage complaints played no role in that termination. Because Defendant identifies no portion of the Article 78 decision that actually decided Plaintiff's FLSA retaliation theory, collateral estoppel does not bar this claim.

**B. Plaintiff's FLSA and FMLA Retaliation Claims Are Not Barred by Res Judicata**

Defendant's res judicata argument fares no better. Although res judicata generally bars claims that were or could have been raised in a prior action, that rule does not apply where the prior forum lacked the power to award the full measure of relief sought in the later action. *See Whitfield v. City of New York*, 96 F.4th 504, 523 (2d Cir. 2024) (explaining that res judicata "will not apply if the initial forum did not have the power to award the full measure of relief sought in the later litigation"). Defendant argues that Plaintiff's claims are barred because the facts underlying his FLSA and FMLA claims existed when he filed his Article 78 petition. *See* Def. Mem. at 13. But that argument ignores whether Plaintiff could have obtained the full statutory relief he seeks here in that prior Article 78 proceeding. He could not.

Plaintiff's prior proceeding was a pure Article 78 proceeding, not a hybrid plenary action. The petition sought classic Article 78 relief: vacatur of Plaintiff's probationary termination, restoration to employment, back pay, and make-whole relief flowing from reinstatement. *See* Exhibit 1, Art. 78 Pet. at 13. The Article 78 decision likewise treated the case as a pure Article 78 proceeding. It opened by stating that "Petitioner William Payne III" commenced "this Article 78 proceeding" seeking to annul the FDNY's determination to terminate his probationary

employment, referred to Mr. Payne as "Petitioner" throughout, and analyzed only whether the FDNY had a rational, good-faith basis for termination. *See* Exhibit 2, Art. 78 Decision at 1-3. Those are the hallmarks of a pure Article 78 proceeding. *See Whitfield,* 96 F.4th at 527, 530 (holding that claim preclusion did not apply where the state court "took no affirmative step to convert the proceeding," instead confined itself to Article 78 review, and described the matter as a "proceeding brought pursuant to CPLR article 78" without language indicating conversion to a hybrid proceeding). Nothing in the Article 78 decision suggests that the court converted the matter into a hybrid proceeding, adjudicated plenary statutory claims, or had before it the full remedial scheme available under the FLSA or FMLA.

Here, Plaintiff's FLSA and FMLA retaliation claims seek federal statutory remedies broader than the relief available in a pure Article 78 proceeding, including liquidated damages, interest, attorneys' fees, costs, and other legal and equitable relief. *See* 29 U.S.C. § 216(b); 29 U.S.C. § 2617(a). Those remedies are not merely incidental to annulling an agency determination; they are independent statutory remedies for retaliation. *See Whitfield*, 96 F.4th at 523-24 (explaining that damages in an Article 78 proceeding are limited to those incidental to the primary relief sought); *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986) (same). Accordingly, even assuming Plaintiff's FLSA and FMLA retaliation claims arise from the same general course of events as his Article 78 petition, they are not barred by res judicata because the Article 78 court could not award the full measure of relief available here. Defendant's res judicata argument should therefore be rejected.

**C. <u>Plaintiff States a Plausible Claim for Retaliation in Violation of the FLSA</u>**

Plaintiff has stated a plausible claim for retaliation in violation of the FLSA. The FLSA prohibits an employer from "discharge[ing] or in any other manner discriminat[ing] against an

employee because such employee had filed a complaint" protected by the statute. *See* 29 U.S.C. § 215(a)(3). To state an FLSA retaliation claim, a plaintiff must plausibly allege that he engaged in protected activity known to the employer, suffered an adverse employment action, and that a causal connection existed between the two. *See Mullins v. City of New York*, 634 F. Supp. 2d 373, 385 (S.D.N.Y. 2009).

Here, Plaintiff complained both in writing and orally on multiple occasions about the unpaid overtime hours he was forced to work as a probationary firefighter. *See Marcotte v. City of Rochester*, 677 F. App'x 723, 726 (2d Cir. 2017) ("[O]ral complaints to an employer afford an employee protection from retaliation under section 215(a)(3) of the FLSA 'when a reasonable, objective person would have understood the employee to have put the employer on notice that the employee is asserting statutory rights under the FLSA.'") (quoting *Greathouse v. JHS Sec, Inc.*, 784 F.3d 105, 115-16 (2d Cir. 2015)). On June 8, 2023, Plaintiff spoke with Roxanne Tabar, FDNY EEO attorney, to report the unpaid overtime he had been forced to work and the resulting uncompensated hours he routinely worked each shift. *See* FAC ¶ 51. The next day, on June 9, 2023, Plaintiff initiated the process of filing a formal grievance with his union regarding, among other things, the unpaid overtime and off-the-clock work he was required to perform. *See id.* ¶ 52. A few days later, after not hearing back from the General Law Unit, Mr. Payne contacted another FDNY EEO attorney, Nicole Benitez, again reporting the unpaid and off-the-clock hours he had been working. *See id.* ¶ 53.

Plaintiff's August 30, 2023, written complaint removes any doubt that Defendant was on notice of his FLSA-protected activity. In that complaint, Plaintiff expressly stated that he had been "denied compensation for time worked[,] specifically overtime," and that he was "forced to work with payment being withheld[,]" which violated "FDNY Policies and Procedures[.]" *See id.* ¶ 75.

Less than four weeks later, Defendant terminated Plaintiff's employment. *See id.* ¶ 78. Thus, Plaintiff did far more than make a generalized workplace complaint. He repeatedly complained that probationary firefighters were required to work off-the-clock without compensation, and he was fired within weeks of putting his complaint in writing.

Defendant's FLSA argument rests on a false premise: that because Plaintiff received a command discipline before his June 8, 2023, complaint, he cannot plausibly allege that his later termination was retaliatory. That assertion is incorrect. Prior discipline does not categorically defeat causation where the discipline was not part of a continuous process that naturally led to termination. *See Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20 Civ. 8037 (JPC), 2023 WL 3764823, at *51-2 (S.D.N.Y. June 1, 2023) (holding that prior adverse action did not defeat causation where plaintiff's termination was not clearly natural culmination of those earlier actions, and concluding that temporal proximity between protected activity and termination satisfied plaintiff's minimal prima facie burden). Here, Plaintiff was subject to discipline for accepting a Mutuals shift from someone in a different Engine, even though FDNY policy permitted it. *See* FAC ¶ 41. Nevertheless, Plaintiff was never given any punishment for this command discipline, and it was never brought up again. *See id.* ¶ 45. That isolated, unpunished command discipline was not a progressive path to termination and does not defeat the plausible inference that Defendant later terminated Plaintiff because of his FLSA-protected complaint.

Nor can Defendant overcome causation at the pleading stage by ignoring the timing of Plaintiff's termination. "'At the prima facie stage, a plaintiff can rely solely on temporal proximity to establish the requisite causal connection between her protected activity and the materially adverse action []he suffered in retaliation for engaging in that activity.'" *Pullman v. Collins*, No. 24-CV-1383 (KMK), 2025 U.S. Dist. LEXIS 404119, at *37 (S.D.N.Y. Sep. 18, 2025) (quoting

*Risco v. McHugh*, 868 F.Supp. 2d 75, 114 (S.D.N.Y. 2012)). Here, Plaintiff made a protected complaint on August 30, 2023, and Defendant terminated his employment just four weeks later. *See* FAC ¶ 75, 78; *see also Murray v. City of N.Y.*, No. 23 Civ. 10031 (PAE), 2024 U.S. Dist. LEXIS 168218, at *25 (S.D.N.Y. July 26, 2024) ("Although 'there is no bright-line rule on temporal proximity, the Circuit has held that a one to two month period between protected activity and adverse action is generally sufficient to make a prima facie causation showing.'") (quoting *Rivera v. JP Morgan Chase*, 815 F. App'x 603, 608 (2d Cir. 2020)). That four-week gap falls squarely within the timeframe courts in this Circuit routinely find sufficient, by itself, to plead causation at the prima facie stage. For these reasons, Plaintiff has plausibly alleged that Defendant terminated him in retaliation for his FLSA-protected complaints.

**D. Plaintiff States a Plausible Claim for FMLA Retaliation**

Plaintiff has also stated a plausible claim for FMLA retaliation. To establish a prima facie case of retaliation under the FMLA a plaintiff must establish that "(1) []he exercised rights protected under the FMLA; (2) []he was qualified for h[is] position; (3) []he suffered an adverse employment action; and (4) the adverse employment action concurred under circumstances giving rise to an inference of retaliatory intent." *See Wasserman v. N.Y.C. Dep't of Educ.*, No. 24-cv-01719-MMG, 2025 U.S. Dist. LEXIS 225313, at *18 (S.D.N.Y. July 10, 2025). Notably, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff "'need only give plausible support to a minimal inference of discriminatory motivation.'" *See Blake v. Recovery Network of Programs, Inc.*, 665 F. Supp. 3d 39, 45 (D. Conn. 2023) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306, 311 (2d Cir. 2015)). Further, under the FMLA, protected activity need only be a "'motivating

factor' in the adverse employment action, not its 'but for' cause." *See C.C. v. Google, LLC*, No. 24 Civ. 7811 (PAE), 2025 U.S. DIST LEXIS 257059, at *30 (S.D.N.Y. July 15, 2025).

Here, from the very outset, Plaintiff was discouraged from taking FMLA leave. Specifically, when Plaintiff spoke with Capt. Condon about his intent to take FMLA leave, Capt. Condon told Plaintiff that he had "just started" and that he "should not be asking" about taking leave. *See* FAC ¶ 47. Ultimately, Plaintiff's FMLA leave request was approved on May 22, 2023. *See id*. ¶ 48. But even after the request was approved, Defendant did not treat Plaintiff's FMLA leave as protected leave that he was legally entitled to take. Instead of permitting Plaintiff to take intermittent FMLA leave as needed, the FDNY cavalierly treated Plaintiff's legitimate leave requests as discretionary and subject to approval. *See id*. ¶ 49. For example, when Plaintiff requested a day off to care for his daughter during a pain crisis associated with her Sickle Cell disease, Lt. Derowitz told Plaintiff that he would decide later whether to approve the request, even though Plaintiff had been approved to take intermittent FMLA leave. *See id*. ¶ 49. These allegations are not vague or conclusory, as Defendant asserts. They identify who discouraged Plaintiff's leave, what was said, when the leave was sought, and how Defendant treated his approved FMLA leave as something that remained subject to approval, suggesting animus.

Defendant contends that Plaintiff relies only on a "vague and conclusory statement" that the "timing and nature" of Defendant's conduct established causation. *See* Def. Mem. at 20. But Plaintiff does not rely on timing alone. On July 3, 2023, ***approximately six weeks*** after Plaintiff's leave was approved, Plaintiff was informed that his Probationary Firefighter term was to be extended for six months, and the only explanation provided was that Mr. Payne had supposedly taken "sick time." *See* FAC ¶ 58. However, it was clear this explanation was bogus because Plaintiff had not taken a single sick day. *See id*. ¶ 59. Indeed, he had only taken legally protected

FMLA leave to care for his daughter. *Id.* Here, Defendant's own authority confirms why those allegations are enough to plead an FMLA retaliation claim. As Defendant acknowledges, the FMLA prohibits employers from "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." *See* Def. Mem at 20; *see also Dennis v. Ultimus Fund Sols., LLC*, No. 20-CV-2813 (NGG) (AYS), 2021 U.S. Dist. LEXIS 152177, at *8 (E.D.N.Y. Aug. 12, 2021) (recognizing that FMLA prohibits employers from using FMLA leave as negative factor in employment actions). Here, Defendant did just that. Defendant identified Plaintiff's leave-related absences as the reason for extending Plaintiff's probation, but the only leave Plaintiff had taken was protected FMLA leave. *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (employer's negative evaluations expressly penalizing plaintiff for FMLA absences sufficient for jury to find retaliatory animus). Thus, Plaintiff has plausibly alleged more than temporal proximity. He has alleged that Defendant expressly relied on leave-related absences as the reason for extending his probation, even though those absences were protected under the FMLA.

Nor is Plaintiff's FMLA retaliation claim limited to the probation extension in isolation. Defendant extended Plaintiff's probationary period from September 28, 2023, to March 27, 2024, based on "sick time" that he never took, when the only leave he had taken was protected FMLA leave. *See* FAC ¶¶ 58–59. That extension prolonged Plaintiff's probationary status, leaving him more vulnerable to adverse action and delaying his path to permanent employment. Defendant then terminated Plaintiff on September 26, 2023, while he was still within the period for which he was approved to take intermittent FMLA leave. *See id.* ¶ 78. At a minimum, those allegations plausibly support the inference that Defendant's retaliatory animus for Plaintiff's exercise of his

FMLA rights was not confined to the probation extension itself but formed part of the retaliatory course of conduct that culminated in his termination.

Even if the Court considered timing alone (which it can), Plaintiff has plausibly alleged causation. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 496 (S.D.N.Y. 2023) ("An inference of retaliatory intent in the FMLA context can be shown when a 'casual connection exists between the plaintiff's protected activity and the adverse action taken by the employer,' which can manifest from 'very close' temporal proximity between the protected activity and adverse action.'") (quoting *Donnelly*, 691 F.3d at 152); see *also Rivera*, 815 F. App'x at 608 ("Though there is no bright-line rule on temporal proximity, this Court has held that a one to two month period between the protected activity and adverse employment action is generally sufficient to make a prima facie causation showing."). Here, ***approximately six weeks*** after Plaintiff began taking intermittent FMLA leave, he was told that his probation was being extended. Thus, temporal proximity alone supports an inference of causation at the pleading stage.

Further, the FDNY's decision to extend Plaintiff's probationary period and then terminate him are clearly adverse actions. *See Kirkland-Hudson*, 665 F. Supp. 3d at 496 ("'The standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination.'") (quoting *Vaughn v. City of N.Y.*, No. 06-CV-5647 (ILG), 2010 U.S. Dist. LEXIS 50791, 2010 WL 2076926, at *14 (E.D.N.Y. May 24, 2010)). "An adverse employment action is 'any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising h[is] legal rights.'" *Smith v. North Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 512 (E.D.N.Y. 2018) (quoting *Millea v. Metro-North R.R.*, 658 F.3d 154, 164 (2d Cir. 2011)). Extending a probationary firefighter's probation by six months easily meets that standard. Probationary status defines an employee's job security and path to permanent

employment. A reasonable employee in Plaintiff's position would plainly be dissuaded from taking FMLA leave if doing so could cause the FDNY to prolong their probationary period by six months. That is especially true here where Plaintiff alleges that the extension was imposed just weeks after his FMLA leave was approved and was allegedly justified because of the "sick time" that he never actually took. *See* FAC ¶¶ 58-61. For these reasons, Plaintiff asserts a plausible FMLA retaliation claim against Defendant.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant's Motion, or, if applicable, permit Plaintiff to further amend his Complaint to address any remaining pleading deficiencies.

Dated: May 7, 2026
White Plains, New York

Respectfully Submitted

**FILIPPATOS PLLC**

By:______________________________

Tanvir H. Rahman
Gabrielle Rosen Harvey
199 Main Street
White Plains, New York 10601
T/F: 914-984-1111
trahman@filippatoslaw.com
grosenharvey@filippatoslaw.com

*Attorneys for Plaintiff*